Filed 1/22/15  P. v. Foster CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C074589 |
| Plaintiff and Respondent, | (Super. Ct. No. 12F05721) |
| v. | |
| MARTIN LEE FOSTER, | |
| Defendant and Appellant. | |

Defendant, Martin Lee Foster, was convicted by jury of a number of crimes.  He pleaded guilty to one other crime.  He was sentenced to prison.  He was advised of his right to appeal.  He understood and waived that right.  Even so, he appeals.  He is represented here by a court appointed lawyer.  That lawyer brings defendant's appeal to us pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).  Thus, we begin with a brief description of the facts and procedural history of the case.  (See *People v. Kelly* (2006) 40 Cal.4th 106, 109-110, 123-124.)

1

BACKGROUND

Defendant, Martin Lee Foster, and Shalayne Brazil were in a long-term relationship. In August 2012, Shalayne was moving and her brother, Aaron, his girlfriend, Annelise, and their father, Joseph, were helping her clean her house. Shalayne and defendant went to Shalayne's parent's home. Aaron and Annelise arrived later and saw defendant and Shalayne leaving the home. Aaron saw "shaking" movement inside Shalayne's car. Shalayne got out of the car and ran towards Aaron, screaming for Aaron to save her. Aaron and Annelise got out of their car. Defendant got out of Shalayne's car. Defendant tried to convince Shalayne to get back in her car. Instead, she got into Aaron's car. Defendant followed her and Aaron placed himself between them. Defendant got into Aaron's car on the driver's side. Ultimately, everyone eventually got out of Aaron's car without any contact. Defendant started to get into Shalayne's car and Shalayne yelled for Aaron not to allow defendant to steal her car. Aaron approached the car and twice told defendant to get out of Shalayne's car. After some posturing between the men, defendant punched Aaron very hard in the face, on the left side of his nose and cheek. Aaron immediately fell to the ground, bleeding profusely. Defendant got back into Shalayne's car. Shalayne was screaming about defendant hitting her brother.

Four women traveling in a car in the area stopped when they heard a woman yelling. They witnessed defendant chasing a screaming woman. They saw defendant punch Aaron. They saw Aaron fall to the ground. One of the women called 911. So did Annelise.

Joseph arrived at the home soon after and, with another man, prevented defendant from leaving in Shalayne's car. Joseph took Aaron to the hospital where Aaron was given pain medication. Aaron's nose was extremely swollen. He could not breathe through his nose. He continued to suffer from pain, difficulty sleeping, an inability to breathe through his nose, and headaches. In December 2012, he underwent surgery for a deviated septum caused by defendant's punch to the face.

2

Throughout the early morning hours of Thanksgiving, starting at approximately 1:00 a.m., defendant called Joseph's cell phone 12 times while Joseph was at home, seeking to speak with Shalayne. Later, in afternoon on Thanksgiving, defendant showed up at the Brazil residence. Joseph approached defendant, who was sitting in a car in front of the home, complained about the late night calls, and told defendant to leave. Defendant responded with profanity and put his right hand towards the back of the car between two seats where there was something that looked like a light tarp. Defendant put his hand under the tarp. Joseph interpreted this as a threat to "do something" to him. Joseph believed defendant had a gun under the tarp. Joseph had previously seen defendant with other weapons, including a knife, which he pulled on Joseph within the last two years. Joseph believed defendant was baiting him to do something. He believed defendant would be willing to use a gun on him. Joseph knew defendant was violent with Shalayne. Defendant finally departed.

Four days later, Shalayne called Joseph in a panic. Defendant was sitting in a car in front of the Brazil home honking his horn. Shalayne was very afraid. At some point, Shalayne told Joseph that defendant had a weapon. Joseph told Shalayne to call 911, lock the doors and get upstairs because he was worried about bullets coming through the walls. Defendant was later arrested.

An information charged defendant with assault by means likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(4))[1] and the personal infliction of great bodily injury (§ 12022.7, subd. (a)) -- count one; battery resulting in the infliction of serious bodily injury (§ 243, subd. (d)) -- count two; misdemeanor battery (§ 243, subd. (e)(1)) -- count three; felony criminal threats (§ 422) -- count four; misdemeanor brandishing a weapon (§ 417.4) -- count five; felony criminal threats (§ 422) -- count six; and

---

[1]    Undesignated statutory references are to the Penal Code.

3

misdemeanor brandishing a weapon (§ 417.4) -- count seven. The information also alleged defendant served two prior prison terms. (§ 667.5, subd. (b).)

The court granted the People's motion to dismiss count five due to insufficient evidence. A jury found defendant guilty of counts one, two, and three, not guilty of count seven, and was unable to reach verdicts on counts four and six. As jury deliberations continued, defendant agreed to enter a global resolution of the case, based on the verdicts already reached and the two counts not yet determined. Defendant agreed to plead no contest to count four, in exchange for a sentence of four years in prison, the upper term on count one, with the sentence on count four to run concurrently. Defendant agreed to receive half-time credits, and the court would order victim restitution on counts one through four. Count six, the two prior prison terms and the violation of probation allegations would be dismissed. Defendant also agreed to waive his appellate rights and any claims of ineffective assistance of counsel.

Defendant entered the no contest plea to count four. He waived any appeal rights he would have as part of this global resolution. The trial court repeatedly advised defendant the plea agreement meant he was giving up his right to appeal. Defendant said he understood and agreed. The trial court advised defendant of all his rights. Defendant said he understood them and voluntarily and freely waived them.

Prior to sentencing, defendant filed a motion to withdraw his plea. In support of the motion, he claimed he took medication on the morning of the plea that caused "sleepiness, drowsiness, and effected my ability to comprehend what was happening." He claimed, based on counsel's ineffective representation, his free will was overcome by his subjective belief he was going to be convicted on the remaining counts and enhancements. Following a contested hearing, the trial court denied the motion. The trial court sentenced defendant to an aggregate term of four years and awarded defendant 541 days of presentence custody credits. It ordered defendant to pay a $240 restitution fund fine (§ 1202.4, subd. (b)), a $240 parole revocation fine (§ 1202.45), a $30 court

4

facility fee (Gov. Code, § 70373, subd. (a)(1)), and a $40 court security surcharge (§ 1465.8).

## DISCUSSION

We appointed counsel to represent defendant on appeal. Counsel filed an opening brief that sets forth the facts of the case and requests this court to review the record and determine whether there are any arguable issues on appeal. (*Wende, supra*, 25 Cal.3d 436.) Defendant was advised by counsel of the right to file a supplemental brief within 30 days of the date of filing of the opening brief. More than 30 days elapsed, and we have received no communication from defendant. Having undertaken an examination of the entire record, we find no arguable error that would result in a disposition more favorable to defendant.

## DISPOSITION

The judgment is affirmed.

      NICHOLSON    , J.

We concur:

      BLEASE    , Acting P. J.

      MAURO    , J.